FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUN 07 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MAURICE COLLIER,

                            Petitioner,

-against-

WILLIAM LEE, a/k/a ROBERT ERCOLE,

                            Respondent.
----------------------------------------------------------X

**MEMORANDUM & ORDER**

08-CV-3441 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner pro se Maurice Collier ("Collier") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his July 8, 2004 conviction in New York Supreme Court, Queens County, for two counts of first degree robbery, two counts of second degree attempted robbery, and two counts of second degree unlawful imprisonment. (Pet. (Docket Entry # 1) at 1.) For the reasons set forth below, Collier's petition is denied.

## I. BACKGROUND

### A. The Commission of the Crime and the In-Person Lineup

On August 6, 2002, Collier robbed a hair salon belonging to Carmen Barasch ("Barasch") in Queens Village, New York, at gun point. (Resp.'s Mem. (Docket Entry # 18) at 2.) Collier took money from the cash register, stole Barasch's wedding ring and pocketbook, and forced Barasch and a customer into the salon's basement. (Id.) Barasch later called 911. (Id. at 8.) On August 12, 2002, Collier similarly robbed Fanny's Beauty Salon, also in Queens Village, at gun point, by taking money from the cash register, stealing an engagement ring and a purse from Tammy Feliz ("Feliz"), and forcing Feliz and several customers into the bathroom. (Id. at 2.) Someone with Feliz then called 911. (Id. at 8.) On August 14, 2002, Collier attempted to rob Marjorie's Beauty Studio in Queens Village, but was fended off by the owner, Marjorie Watson

1

("Watson"). (Id. at 2.) In the struggle, Watson was able to rip off Collier's shirt and necklace before Collier pistol-whipped Watson and left empty handed. (Id. at 9.) Watson then called 911. (Id.)

Later that day, New York City Police Detective Philip Panzorella ("Panzorella") showed Watson a photo array of suspects, including Collier, whom Watson identified as the perpetrator. Hr'g Tr. at 11, People v. Collier, No. 2652/2002 (N.Y. Sup. Ct., Queens Cnty. Feb. 3, 2004) (hereinafter "Feb. 3, 2004 Hr'g"). Panzorella then unsuccessfully attempted to find Collier to bring him to the police station for an in-person lineup. Id. at 12-13. On August 15, 2002, Panzorella received a phone call from a man named Carl Webber ("Webber") who said he was Collier's brother. Id. at 12-13. Webber stated on the phone that he was planning on hiring counsel to represent Collier. Id. at 14. Later that night, a man named Kenneth Jones ("Jones") called Panzorella, and stated that he was a lawyer and represented Collier. Id. Jones offered to have Collier surrender himself on August 20, 2002. Id. Panzorella refused, stating that Collier was a flight risk. Id. Jones then stated, "Detective, you do what you have to do." Id.

On August 16, 2002, New York City police officers arrested Collier at his home, and brought him to the police station for an in-person lineup. Id. at 15-16. It is unclear from the record whether the arresting officers had a valid warrant to do so. Once Collier arrived at the precinct, Panzorella called Jones to tell him that Collier was arrested and would be placed in an in-person lineup later that day. Id. at 16. At some point later that day, Panzorella phoned another attorney, whom he believed to be David Zucker ("Zucker"), Collier's attorney in an unrelated case. Id. at 17-18. Zucker informed Panzorella that he did not wish to know any information about Collier's case other than whether he was represented by another attorney. Id. at 18. Panzorella informed Zucker that Jones was representing Collier, and then ended the phone

conversation. Id. When the lineup was ready to proceed, Jones informed Panzorella that he would not be attending the lineup. Id. at 19. When informed that he was about to be placed in a lineup, Collier requested that Zucker appear on his behalf. Order at 2, People v. Collier, No. 2652/2002 (N.Y. Sup. Ct., Queens Cnty. Feb. 5, 2004) (Lyons Decl. (Docket Entry # 19) Ex. E). Neither Jones nor Zucker attended. See id. At the lineup, Barasch, Feliz, and Watson all positively identified Collier. Trial Tr. at 60, 116, 184, People v. Collier, No. 2652/2002 (N.Y. Sup. Ct., Queens Cnty. June 28, 2004).

### B. Pre-Trial Proceedings and Trial

On December 16, 2002, Collier's attorney filed an omnibus motion to, among other things, request a probable cause hearing. (Lyons Decl. Ex. A.) On January 21, 2003, the trial court noted that the motion was unsigned and unsworn. (Lyons Decl. Ex. B at 1.) The trial court denied Collier's "request for a hearing on the issue of probable cause . . . as it is unsupported by sworn factual allegations." (Id. at 3.) Nonetheless, the court granted Collier's request for a suppression hearing. Hr'g Tr., People v. Collier, No. 2652/2002 (N.Y. Sup. Ct., Queens Cnty. July 2, 2003). On July 2, 2003, the court denied Collier's motion to suppress any evidence at trial. See id. On October 31, 2003, Collier's attorney petitioned the court to reopen the suppression hearing regarding the identifications made at the lineup. (Lyons Decl. Exs. C, D.) The court granted the request and, on February 3, 2004, held another suppression hearing. Feb. 3, 2004 Hr'g at 2. On February 5, 2004, the court again rejected Collier's motion to suppress the lineup identifications. Order, People v. Collier, No. 2652/2002 (N.Y. Sup. Ct., Queens Cnty. July 2, 2003.)

Trial commenced on June 14, 2004. See Trial Tr. At trial, the People conceded that no fingerprints were found on any materials recovered from Marjorie's Beauty Studio. Id. at 243-44. The People also were unable to turn over any of the 911 calls to Collier because they had

3

been accidentally destroyed. Id. a 483. During the jury charge, the judge gave the jury an adverse-inference instruction regarding the 911 tapes. Id. Shortly after it began deliberating, the jury submitted a note to the judge stating that it required "more evidence" than just eyewitness testimony. Id. at 501. After conferring with both sides, the court issued a supplemental instruction, reminding the jurors not to "speculate" regarding evidence not in the record. Id. at 507. On July 8, 2004, the jury returned a verdict of guilty. Id. at 536-39.

C. Petitioner's Appeals

Collier retained new counsel for his appeal. (See Lyons Decl. Ex. F.) On April 26, 2006, Collier appealed his conviction to the New York Supreme Court, Appellate Division, Second Department, solely on the ground that he was deprived of his right to counsel at the lineup. (Lyons Decl. Ex. G.) On December 12, 2006, the Second Department rejected Collier's appeal. People v. Collier, 826 N.Y.S.2d 894 (2d Dep't 2006). On January 2, 2007, Collier sought leave to appeal to the New York Court of Appeals. (Lyons Decl. Ex. J.) On February 21, 2007, the Court of Appeals denied his request. People v. Collier, 9 N.Y.3d 841 (2007).

On April 5, 2007, Collier sought to collaterally attack his conviction under New York Criminal Procedure Law § 440.10, on the grounds that the conviction was obtained by "duress, misrepresentation, or fraud," that the evidence presented at trial was obtained in violation of his Fourth Amendment rights, that the trial court conducted itself improperly, and that the judgment of conviction violated his constitutional rights. (Lyons Decl. Ex. P.) On April 30, 2007, the court rejected every claim in Collier's § 440.10 motion as "procedurally barred." Order, People v. Collier, No. 2652/2002 (N.Y. Sup. Ct., Queens Cnty. Apr. 30, 2007) (Lyons Decl. Ex. R).

On February 6, 2008, Collier filed a petition for a writ of error coram nobis in the Second Department, substantially alleging that he received ineffective assistance of appellate counsel. (Lyons Decl. Ex. S.) On June 3, 2008, the Second Department denied Collier's petition. People

v. Collier, 52 A.D.3d 526 (2d Dep't 2008). The New York Court of Appeals denied Collier's request for leave to appeal on August 8, 2008. People v. Collier, 11 N.Y.3d 735 (2008).

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Determinations of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." Id. § 2254(e)(1).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. For relief to be warranted, the "state court's application of governing federal law . . . must be shown to be not only erroneous, but objectively unreasonable." Waddington v. Sarausad, 129 S. Ct. 823, 831 (2009) (internal quotation marks

5

omitted).

In assessing "clearly established" federal law, a federal district court must confine itself to the holdings, as opposed to the dicta, of the Supreme Court. See Carey v. Musladin, 549 U.S. 70, 74 (2006). Moreover, "Musladin admonishes courts to read the Supreme Court's holdings narrowly and to disregard as dicta for habeas purposes much of the underlying logic and rationale of the high court's decisions." Rodriquez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007); see also Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004). ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations.").

A state court's finding of procedural default, absent certain exceptions, bars a federal court from granting habeas relief. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). To overcome such a default, a petitioner must demonstrate either (1) cause and actual prejudice, or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. Id. at 750. A state court holding that a claim is *both* procedurally barred and without merit is sufficient to invoke a state procedural bar. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 (2d Cir. 2000).

A pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "If a pro se litigant pleads facts that would entitle him to relief, that petition should not be dismissed because the litigant did not correctly identify the statute or rule of law that provides the relief he seeks." Thompson v. Choinski, 525 F.3d 205, 209 (2d Cir. 2008).

## III. DISCUSSION

### A. Right to Lineup Counsel

Construed liberally, Collier's petition asserts that his constitutional right to counsel was violated when counsel of his choice did not attend his August 16, 2002 lineup. (Pet. at 4.) In addressing his right-to-counsel claim, the Second Department determined that, "[c]ontrary to the defendant's contention, he was not deprived of his right to counsel at an investigatory lineup." Collier, 826 N.Y.S.2d at 894. As general matter, an individual does not enjoy a federal constitutional right to counsel before the filing of an accusatory instrument. Kirby v. Illinois, 406 U.S. 682, 689-90 (1972). This rule applies to pre-indictment identification procedures. Id. In New York, however,

> when the police are aware that a criminal defendant is represented by counsel and the defendant explicitly requests the assistance of his attorney, the police may not proceed with the lineup without at least apprising the defendant's lawyer of the situation and affording him or her an opportunity to appear.

People v. Coates, 74 N.Y.2d 244, 249 (1989). Here, Collier participated in the investigative lineup on August 16, 2002—almost three months before he was indicted. (See Resp.'s Mem. at 3.) Therefore, when Collier participated in the lineup, he did not yet possess a federal constitutional right to counsel. See Kirby, 406 U.S. at 689-90. Because, prior to his indictment, Collier had yet to possess a right to counsel under the U.S. constitution, he cannot claim "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991). To the extent Collier asserts he was deprived of his right to counsel under the New York State Constitution, the court lacks jurisdiction over this claim because "federal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S. at 67.

B.  **Ineffective-Assistance-of-Counsel Claims**

Collier's petition asserts ten separate ineffective-assistance-of-counsel claims: four against trial counsel and six against appellate counsel.[1]

1.  Ineffective Assistance of Trial Counsel

Collier argues that his trial attorney was constitutionally ineffective because: (1) trial counsel fail to swear to or sign Collier's omnibus pretrial motion, resulting in the trial court denying his request for a probable cause hearing; (2) trial counsel failed to submit a notice of potential alibi witnesses to the prosecution; (3) trial counsel failed to call certain witnesses at the February 3, 2004 hearing; and (4) trial counsel failed to investigate certain witnesses at trial. (Pet. at 4.)

Collier's claim regarding the omnibus motion is procedurally barred. A federal habeas court cannot consider a claim from a petitioner in state custody if the state-court adjudication of the claim "rests on a state law ground that is independent of the federal question and adequate to support the judgment." Garcia v. Lewis, 188 F.3d 71, 76 (2d Cir. 1999). This rule applies whether the state-law ground is substantive or procedural. Id. Collier raised this vein of his ineffective-assistance-of-trial-counsel claim in his § 440.10 motion, collaterally attacking his conviction. (See Lyons Decl. Ex. P.) The reviewing court denied Collier's motion under New York Criminal Procedure Law § 440.10(2)(c) due to Collier's failure to raise this argument on direct appeal. Order, People v. Collier, No. 2652/2002 (N.Y. Sup. Ct., Queens Cnty. Apr. 30, 2007). "The federal courts have consistently held that decisions based on [§] 440.10(2)(c) constitute 'adequate and independent' state grounds." White v. West, No. 04-cv-2886 (RRM),

---

[1] Collier's original petition was unclear regarding which ineffective assistance claims applied to which of his attorneys. On November 12, 2008, the court issued an Order directing Respondent to reply to Collier's petition, in which it noted this ambiguity. (Order (Docket Entry # 4) at 2 n.1.) On November 26, 2008, Collier submitted a letter to the court that resolved the ambiguity by clearly specifying which claims applied to which of his attorneys. (Docket Entry # 7.)

8

2010 WL 5300526, at *11 (E.D.N.Y. Dec. 6, 2010) (citing Sweet v. Bennett, 353 F.3d 135, 140-41 (2d Cir. 2003)). Consequently, the court dismisses Collier's ineffective-assistance-of-trial-counsel claim regarding trial counsel's failure to sign the omnibus motion.

Collier's remaining ineffective-assistance-of-trial-counsel claims are dismissed as procedurally unexhausted. A federal court cannot review claims that have not been exhausted in state court unless "there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." Aparicio v. Artuz, 269 F.3d 78, 89-90 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)) (internal punctuation omitted). Collier did not present *any* of his remaining ineffective-assistance-of-trial-counsel claims in state court, either on direct appeal, his § 440.10 collateral attack, or his petition for a writ of error coram nobis. (See Lyons Decl. Exs. G, P, S.) To be sure, in his petition for a writ of error coram nobis, Collier did present the argument that his appellate counsel was constitutionally ineffective for failing to raise these arguments on appeal. (Id. Ex. S.) But a claim regarding the ineffective assistance of *trial* counsel is not the same as a claim regarding the ineffective assistance of *appellate* counsel, even when it concerns appellate counsel's failure to raise an ineffective-assistance-of-trial-counsel claim. See Alexandre v. Senkowski, 126 F. App'x 7, 11 (2d Cir. 2005). Because these two types of claims are not necessarily coextensive, it is possible, therefore, to procedurally exhaust one without exhausting the other. See id. Here, nothing prevented Collier from raising his remaining claims of ineffective assistance of trial counsel in his § 440.10 motion in state court. Spurned by the state court's denial of his § 440.10 motion, Collier may not now assert the ineffective-assistance-of-trial-counsel claims he failed to make on collateral review. Collier's remaining ineffective assistance of trial counsel claims, therefore, fail.

9

## 2. Ineffective Assistance of Appellate Counsel

Collier also argues that his appellate attorney was constitutionally ineffective because he: (1) failed to argue that the police arrested Collier at his home without a valid search warrant; (2) failed to appeal the issue concerning the 911 tapes; (3) failed to argue that the trial court gave the jury an improper instruction concerning eyewitness testimony; (4) failed to assert that two individuals could not identify him from a photo array and that another could not identify him at the lineup; (5) failed to challenge the suggestiveness of the lineup; and (6) failed to raise a weight-of-the-evidence argument concerning the absence of Collier's fingerprints on some items recovered at the scenes of the crimes. (Pet. at 4-5.) Collier raised all of these arguments in his application for a writ of error coram nobis to the Second Department. (Lyons Decl. Ex. S.) This suffices as exhaustion of Collier's claims regarding the ineffective assistance of his appellate counsel. See Ramchair v. Conway, 601 F.3d 66, 71 (2d Cir. 2010) (concluding that the petitioner's application for a writ of error coram nobis constituted exhaustion). The Second Department rejected Collier's petition for a writ of error coram nobis on the merits, finding that he "failed to establish that he was denied the effective assistance of appellate counsel." Collier, 52 A.D.3d at 526.

The Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). To prevail on an ineffective assistance of counsel claim, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the [petitioner]." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To show prejudice under Strickland, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

"Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to appellate counsel." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). A petitioner may show that appellate counsel's performance fell below an objective standard of reasonableness "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id. at 533. Nonetheless, "[i]n assessing the attorney's performance, a reviewing court must judge [her] conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess [her] strategy choices." Id. (quoting Strickland, 466 U.S. at 690) (internal citations omitted). "To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a 'reasonable probability' that his claim would have been successful before the state's highest court.'" Id. at 534 (quoting Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)) (internal alterations omitted).

      a.      Illegal Arrest Claim

Collier claims that his appellate counsel was ineffective for failing to argue that his warrantless arrest at his home, to secure his participation in the lineup, violated the Fourth Amendment. (Pet. at 4.) In a March 16, 2002 letter to Collier, his appellate counsel discussed why she declined to include such a claim in her brief. (Lyons Decl. Ex. F. ("Letter") at 2.) She stated that because "no statements were introduced against you at trial, that would not be an issue. The Court of Appeals has held that a Payton[v. New York, 445 U.S. 573 (1980)] violation does not apply to lineups—that is, the lineup would not be suppressed because of it. See People v. Corey Jones, 2 N.Y.3d 235 (2004)."

Appellate counsel's reading of the law appears to be correct. In Payton, the United States Supreme Court applied the exclusionary rule to statements made to police following a warrantless arrest in the suspect's home, even though the police had probable cause to make the arrest. 455 U.S. at 603. In People v. Jones, the Court of Appeals held that "the State Constitution does not require the suppression of evidence of a lineup identification made after an arrest based on probable cause but in violation of Payton" because lineup identifications following an arrest are not "the 'fruit of the poisonous tree'" under Payton. 2 N.Y.3d at 244-45. Therefore, even if Collier was arrested at his home without a search warrant, appellate counsel was not objectively unreasonable in omitting this argument from her appellate brief because, as she believed, Jones foreclosed that claim. Consequently, the Second Department did not unreasonably apply Strickland or make an unreasonable determination of appellate counsel's performance in light of the evidence.

b.  Prejudice Claim

Collier argues that his appellate counsel was ineffective for failing to argue that Collier was prejudiced by the People's failure to turn over witness statements, as required by People v. Rosario, 9 N.Y.2d 286 (1961), specifically the 911 tapes. (Pet. at 4.) In its charge, however, the trial court instructed the jury that "[t]hese tapes were not provided to the defendant and have been lost or destroyed. You may infer, but you are not required to accept, that had these tapes been in possession of the defendant, they may have been favorable to the defendant." Trial. Tr. at 483. Where exculpatory evidence has been lost or destroyed, the Court of Appeals has sanctioned the use of similar "adverse inference instructions" as sufficient to prevent prejudice to the defendant. See People v. Joseph, 86 N.Y.2d 565, 570-71 (1995); see People v. Martinez, 71 N.Y.2d 937 (1988) (holding that evidentiary sanctions appropriate where Rosario material has been lost or destroyed). Collier's prejudice claim regarding the loss of the 911 tapes was,

12

therefore, extremely weak, and appellate counsel could not be construed as objectively unreasonable in omitting this argument from her appellate brief. Accordingly, the Second Department did not unreasonably apply Strickland nor make an unreasonable determination of the facts regarding appellate counsel's performance in light of the evidence.

     c.  Prejudicial Jury Instruction Claim

Collier argues that his appellate counsel was ineffective for failing to raise a challenge to one of the trial court's supplemental jury instructions. (Pet. at 5.) Following the first day of deliberations, the jurors sent a note to the trial court. Trial Tr. at 501. The court summarized the note as follows:

> Two jurors refuse to convict based on eyewitness testimony alone. They need to know more and have more evidence. They believe the eyewitnesses, they believe the witnesses[—]I think ["]eye["] is crossed out[—]they believe the witnesses are credible, but cannot move one [sic]. They are talking about evidence that was not—that has not been presented, but would like to see.

Id. After argument from both sides, the court instructed the jury:

> As I told you during my charge, the People have the burden of proving the case beyond a reasonable doubt and in considering this case you should consider all the evidence, not the evidence as that's pertaining to eyewitness alone [sic] or anything. I instructed you that you should consider all the evidence presented to you in this case and that is all that you can consider. You cannot speculate or discuss matters that was [sic] not presented to you. Anything that was not evidence in this case you can't consider. It's not part of this case, so you should not be talking about evidence that has not been presented, but you would like to see. The case is over. I cannot give you any more evidence than that which has been presented to you. Based on the evidence that has been presented to you, you should consider that evidence alone.

Id. at 507. In determining whether to issue supplemental jury instructions during trial, the state court has broad discretion to "give such requested information or instruction as the court deems proper." N.Y. Crim. Proc. Law § 310.30. Where the jury requests evidence not presented at trial, the court may—indeed, it is sometimes required—to issue a supplemental instruction reminding the jury to only consider the evidence presented at trial and to caution against

13

"speculating on the meaning of any evidence [not] before it." See People v. Betts, 70 N.Y.2d 289, 295 (1987). Consequently, Collier's prejudice claim regarding the supplemental jury instruction was extremely weak, and appellate counsel could not be construed as objectively unreasonable for omitting this argument from her appellate brief. Accordingly, the Second Department did not unreasonably apply Strickland nor make an unreasonable determination of the facts regarding appellate counsel's performance in light of the evidence.

### d. Weight of the Evidence Claims

Lastly, Collier argues that appellate counsel was constitutionally deficient for failing to raise several weight-of-the-evidence claims, specifically, that the police may have stated to Barasch, Feliz, and Watson that they had a suspect in custody; that another witness failed to identify Collier at the lineup; and that some of the evidence recovered from the robbery at Marjorie's Beauty Studio did not have Collier's fingerprints on them. (Pet. at 5.) In her letter to Collier, appellate counsel specifically rejected Collier's request to put these arguments in her brief because they were based on "fact[s] that does not contribute to a finding of guilt by itself." (Letter at 2.) Appellate counsel mentioned to Collier that this may be "discouraging . . . [but] the strongest brief is not necessarily the one that raises the most issues." (Id.) In New York, a weight-of-the-evidence determination is an intensive, fact-based review of the evidence presented at trial. See People v. Danielson, 9 N.Y.3d 342, 348 (2007). "Essentially, the court sits as a thirteenth juror and decides which facts were proven at trial." Id. Because a weight-of-the-evidence appellate claim is idiosyncratic to the reviewing court, see Smith v. Custodio, 616 N.Y.S.2d 543, 544 (2d Dep't 1994), and because the evidence here demonstrates that appellate counsel thoughtfully considered—and rejected—a weight-of-the-evidence appellate claim, it cannot be said that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533. In these

circumstances, appellate counsel could not be considered objectively unreasonable in her decision to omit such claims, and the Second Department did not err by finding the same.

## IV. CONCLUSION

Petitioner's petition for a writ of habeas corpus is DENIED. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this decision would not be taken in good faith and, therefore, in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
   June _3_, 2011

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge